REED H. AND SHIRLEY R. JOHNSTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnston v. Commissioner
Docket No. 10785-89
United States Tax Court
T.C. Memo 1991-5; 1991 Tax Ct. Memo LEXIS 5; 61 T.C.M. (CCH) 1634; 13 Employee Benefits Cas. (BNA) 1549; T.C.M. (RIA) 91005; January 14, 1991, Filed *5 Decision will be entered under Rule 155. Reed H. Johnston, for the petitioners. Robert M. Finkel, for the respondent. KORNER, Judge. KORNER
MEMORANDUM OPINION For the calendar year 1985, respondent determined a deficiency in the income tax of petitioners in the amount of $ 15,225. The only issue which we must decide is whether a distribution in 1985 to petitioner Reed H. Johnston (hereinafter petitioner) from a profit-sharing plan in which he was a participant should be taxable as capital gain or as ordinary income. Some of the facts were stipulated, and such stipulation, together with accompanying exhibits, is incorporated herein by this reference. At the time of filing their petition herein, petitioners were residents of Wellesley, Massachusetts. From August 1961 to sometime in the summer of 1975, petitioner was employed as a physicist with Arthur D. Little, Inc. (hereinafter Little). While so employed, petitioner was a participant in Little's profit-sharing plan (hereinafter plan). At all times in issue in this case the plan was a qualified profit-sharing plan within the meaning of section 401(a). [1] During petitioner's employment with Little, he borrowed extensively *6 against his profit-sharing account for the purpose of financing his children's college and graduate school educations. In 1975, at age 53, petitioner terminated his employment with Little. Since he was at that time two years short of the plan's early retirement age, which was 55, he took no distribution attributable to employer contributions from his profit-sharing account. However, petitioner took a distribution of that portion of his account which was attributable to his contributions. After the termination of his employment with Little, petitioner was self-employed as a consultant in engineering physics. In August 1984, petitioner was notified by the plan administrator that he had to repay all loans which were outstanding against his account balance by December 31, 1984. At that time, petitioner's loan *7 balance was $ 34,174 of principal and $ 26,141.60 of interest, or a total amount due of $ 60,315.60. Petitioner was notified by the plan that if he did not repay the outstanding loans from the plan by December 31, 1984, the amount due would be subtracted from his account on December 31, 1984; that he would be deemed to have taken a distribution from the plan in the amount so offset; and that this amount would be taxable as ordinary income in 1984. At that time, petitioner considered various alternatives including: (a) Do nothing and allow the plan to offset his account balance; (b) refinance his personal residence to obtain the money necessary to repay the loan balance outstanding; (c) refinance his personal residence and retire under the terms of the plan effective January 1, 1985, and begin to take immediate periodic distributions from the plan; and (d) retire under the terms of the plan effective January 1, 1985, take an immediate distribution on January 1, 1985, of an amount equal to the amount of the loan outstanding, and begin immediate periodic payments of the remaining balance. Under alternative (d), petitioner would take a bridge loan in order to pay down the loan balance *8 outstanding before December 31, 1984, as required by the plan. In connection with his evaluation of the alternative courses of action, petitioner inquired from the plan administrator as to the tax implications of alternative (d). In response thereto, the administrator informed petitioner that the distribution of the $ 60,315.60 would be taxable to him as capital gain. In connection with his evaluation of the various alternative courses of action, petitioner on September 9, 1984, had requested from the plan's administrator permission to have the remaining balance of his profit-sharing account invested entirely in the plan's "balanced growth account" rather than the customary split between the "balanced growth account" and the "capital conservation fund." Because of the difference in return of the two funds, petitioner felt that if the administrator approved his request, then remortgaging his house (either alternative (b) or (c), supra) would be the preferred course of action. However, if the traditional split were required by the plan administrator, then this would favor alternative (d), supra. The plan administrator approved the investment of the balance of the account *9 in the plan's "balanced growth account" during the third week of December 1984. However, this left petitioner insufficient time to arrange for a mortgage on his house. Accordingly, at the end of December 1984, petitioner notified the administrator that he would retire under the terms of the plan effective January 1, 1985; that he would take a distribution of $ 60,315.60, and that he would elect a periodic distribution of the remaining balance of his account beginning January 1, 1985, which was alternative (d), supra. In conformity with his election, petitioner secured a loan from a local bank which he used to pay off the educational loans outstanding against his profit-sharing account at the end of 1984, and repaid such loan at the beginning of 1985 with the proceeds of a distribution of $ 60,315.60 from the plan. Once again, the plan notified petitioner that this distribution would be taxable as a capital gain. As of December 31, 1984, the balance in petitioner's profit-sharing account was $ 172,225.93, which represented only employer contributions and investment experience thereon. Petitioners concede on brief that respondent's determination herein was correct, in that *10 the distribution to petitioner from the plan in 1985 was properly taxable as ordinary income. Petitioners then go on to argue, in a manner we find difficult to follow, that the determination against petitioners herein constitutes a fine or penalty, which is improper in this case. Then, having correctly discovered and conceded that no fine, penalty or any addition to tax herein was determined by respondent, petitioners proceed, scarcely missing a beat, to argue that respondent's determination of the correct tax due herein from them in itself constitutes a fine or penalty against them which this Court should not uphold, upon vaguely-stated equitable principles. The first answer to this line of argument is that respondent's determination of deficiency herein was nothing more than the correct determination of the tax which petitioners owed upon the distribution to them by the plan in 1985. In no sense was it a fine, penalty, or addition to tax of any nature. It was nothing more than a determination of that which petitioners owed in the first place. Petitioners then argue that under the "unique" circumstances of this case, apparently involving this misinformation which petitioner *11 received from the plan administrator, it would be inequitable to hold petitioner liable for the correct tax which he concededly owes, because, if he had known the true tax status of the payments to him in 1985, he could have perhaps done something different to minimize the tax impact upon him. Again, the answer to this is relatively simple. This Court is not a court of equity and does not have general equitable powers. ; ; , affd. . Even if we possessed the equitable power which petitioners ask us to exercise here, we would conclude that there is no occasion to exercise it in petitioners' favor. What happened here was not the fault of respondent. What happened here was that petitioner made a decision to take certain action with regard to his plan, apparently based upon incorrect information as to the tax consequences, provided by the plan administrator. The results may be unfortunate from petitioner's standpoint, in that he finds himself liable to pay a larger tax than he *12 originally thought. However, there was no involvement of respondent in this error; it was the error of the plan administrator, in whose opinion petitioner apparently acquiesced. Respondent did not participate in giving the opinion or in influencing petitioner's decision in any way, and there is no equity in seeking to have respondent bear the financial burden of petitioner's unfortunate mistake. Because of respondent's concession at trial and on brief that the provisions of income averaging may be applicable in the present situation, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the International Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩